UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY E. BROOKS,

     Plaintiff,

v.                            CASE No. 8:13-CV-2447-T-30TGW

WASTE PRO OF FLORIDA, INC.
and ANDY TOLLER,

     Defendants.

_____

REPORT AND RECOMMENDATION

At the conclusion of mediation in this employment action, the parties and their counsel signed a Mediated Settlement Terms Sheet, which indicated that a formal settlement agreement would be prepared and signed at a later date. The plaintiff refused to sign the formal settlement agreement, and his counsel has filed a motion to enforce the agreement or, alternatively, to reopen the case and for withdrawal of counsel (Doc. 31). For the following reasons, I recommend that the motion be granted to the extent that the terms of the settlement agreement be enforced.

I.

The plaintiff, Anthony E. Brooks, brought this lawsuit against defendants Waste Pro of Florida, Inc., and Andy Toller, alleging that he was subjected to race discrimination and retaliation (Doc. 1). On November 19, 2014, United States District Judge James S. Moody, Jr., entered an Order referring the case to mediation and directing the parties to select a mediator (Doc. 17). The parties selected Christopher M. Shulman as their mediator, and mediation was scheduled for March 24, 2015 (Docs. 18, 19). Following the mediation, Shulman filed a Mediation Report stating that the case had been completely settled (Doc. 28).

On March 25, 2015, the district court entered an Order dismissing the case "without prejudice and subject to the right of the parties, within sixty (60) days of the date of this order, to submit a stipulated form of final order or judgment should they so choose **or** for any party to move to reopen the action, *upon good cause shown*" (Doc. 29) (emphasis in original). After the 60-day period, dismissal would be with prejudice (id.).

In connection with the settlement reached during mediation, the parties and their counsel signed a Mediated Settlement Terms Sheet (Doc. 31, pp. 4-5). Among other things, the terms sheet stated that "the Parties agree to enter into a final settlement agreement, which shall contain, but not be

limited to, a general release and waiver of all claims, in a form and language mutually acceptable to the Parties" (id., p. 4).

Pursuant to the terms sheet, counsel for the parties prepared a Settlement Agreement and Release of Claims (Defendant's Exhibit 1). The agreement "includes a general waiver of all claims, except for a pending workers compensation claim by Plaintiff against Defendant Waste Pro of Florida, Inc." (Doc. 36, pp. 2-3; see Defendant's Exhibit 1).

At some point after the mediation, the plaintiff contacted the office of his attorney, Charles E. Lykes, Jr., and "express[ed] some displeasure with the settlement" (Doc. 31, p. 1). Lykes attempted to have substantive conversations concerning this matter with the plaintiff, but those efforts were unsuccessful (id., pp. 1-2).

On May 22, 2015, the plaintiff sent a letter to defense counsel, stating (Doc. 37-1):

> I Anthony Earl Brooks do not agree with the stipulation in the final settlement agreement. First I don't agree with releasing Waste Pro from all pending claims. Second thing's [sic] I disagree with is relieving Waste Pro from all medical claims. I will disagree with this matter being a part of this settlement. The settlement amount is not adequate enough for me to sign off on.

Thereafter, in June 2015, the plaintiff submitted a letter to the court which essentially alleged ineffective assistance of counsel (Doc. 35).

As indicated, Lykes now seeks to enforce the mediated settlement agreement or, alternatively, to reopen the case and for permission to withdraw as counsel due to irreconcilable differences with the plaintiff (Doc. 31). The defendants do not oppose the request to enforce the settlement agreement or the request for Lykes to withdraw as counsel for the plaintiff, but they do oppose the request to reopen this matter (Doc. 36).

The motion was referred to me to conduct an evidentiary hearing concerning the enforcement of the mediated settlement agreement, and to enter a report and recommendation containing proposed findings of fact and a recommended disposition of the motion (Doc. 40). The evidentiary hearing was held before me on July 27, 2015, and testimony was received from Shulman, Lykes, defense attorney Ignacio Garcia, and the plaintiff.

Shulman is a member of The Florida Bar and a mediator. He conducted the mediation in this case; Lykes, Garcia, and the plaintiff were in attendance. The mediation lasted approximately seven hours. Shulman did not find the length of the mediation to be unusual, and he noted that the parties had requested that an entire day be set aside for the mediation.

The mediation began with all attendees in one room, where opening statements were presented by Shulman and counsel for the parties. Thereafter, Shulman separated the parties into caucus rooms, and he met privately with them until an agreement was reached in principle. Shulman was not present in either caucus room at all times; he waited in his office when the parties and their counsel excused him so that they could have private conversations.

At times, the plaintiff told Shulman that he would rather take the matter to trial than accept the proposed settlement offer. Shulman said that it is common throughout mediation for parties to make similar statements.

At the end of the mediation, Shulman reduced the parties' agreement to the Mediated Settlement Terms Sheet (Plaintiff's Counsel's Exhibit 1). According to Shulman, it is common to have a mediated settlement terms sheet prior to a final settlement agreement in labor and employment mediation.

Both parties and their counsel had input regarding the terms sheet. Shulman did not recall whether the plaintiff's worker's compensation claim was discussed with regard to the terms sheet.

Shulman witnessed the parties sign the terms sheet. He did not see the plaintiff being misled or coerced into signing the terms sheet; rather,

he felt that the plaintiff signed the terms sheet voluntarily and with knowledge. If he felt that the plaintiff was misled or coerced, he would have been required by the mediator ethics rules to stop the mediation.

Lykes, who was admitted to practice law in January 1980, represented the plaintiff in the litigation and mediation against defendant Waste Pro of Florida, Inc. Lykes testified that he represented the plaintiff in good faith; he arrived at the mediation with an open mind, he negotiated as hard as he could, he advised the plaintiff ethically and honestly, and he tried to convey the positive and negative aspects of the plaintiff's case. He thought the mediation process was fair and equitable, and he believed that the plaintiff agreed to the terms of the settlement. Lykes signed the terms sheet, and he observed the plaintiff sign it as well. He in no way misled or coerced the plaintiff into signing the terms sheet; he believed that the plaintiff signed the document voluntarily and intelligently.

After the mediation, Lykes received a Settlement Agreement and Release of Claims from defense counsel. The first draft of that document did not contain the following language: "The Parties agree that this Agreement shall not apply to Plaintiff's workers compensation claim, case number OJCC14-003992DBB." Lykes added this language to the agreement based on the plaintiff's concern that he would not be able to proceed with an appeal

in his worker's compensation case.  This was the only change made to the settlement agreement drafted by defense counsel; Lykes thought it satisfied all requirements of the plaintiff.

Neither this case nor the settlement agreement related to the plaintiff's worker's compensation claim.  The worker's compensation case was not an issue during the mediation.

Lykes testified that the final Settlement Agreement and Release of Claims (Defendant's Exhibit 1) contains the same payment and general release discussed in the terms sheet; this was the last version of the settlement agreement that Lykes showed the plaintiff.  In his opinion, the Settlement Agreement and Release of Claims is the more comprehensive agreement referred to in the terms sheet.

Against Lykes' advice, the plaintiff refused to sign the formal settlement agreement.  Lykes asked the plaintiff to consult with another attorney if he had questions regarding the settlement agreement; Lykes said he would be available to tell the plaintiff or any other attorney why he thought the agreement was fair.  Lykes believed that the plaintiff was reviewing the settlement agreement until the eve of the deadline in the district court's 60-day Order.

Garcia, a labor and employment attorney who has been practicing for approximately 16 years, attended the mediation as counsel for the defendants.    He understood that the plaintiff's case involved discrimination and retaliation claims, as well as several other claims, and the mediation was to resolve all of the plaintiff's claims.

The mediation began with all participants in one room.  After opening statements and Shulman explained the process, the parties were separated into their own rooms and Shulman went back and forth between the rooms.   Waste Pro's corporate representative attended the mediation in person; Toller and the insurance representative attended by phone.

Throughout the mediation, the numbers offered by the parties kept narrowing down until the plaintiff and his counsel agreed to $25,000 in exchange for a general release.   Garcia explained that a terms sheet was created to set out the essential terms of the agreement.   Garcia and Waste Pro's corporate representative signed the terms sheet at the end of the mediation.

Garcia prepared a more comprehensive settlement agreement after the mediation, and he presented it to Lykes.   The plaintiff's worker's compensation claim was not discussed in mediation; however, Lykes wanted

to make clear in the settlement agreement that the worker's compensation claim was not being waived. In following up with Lykes, Garcia learned that the plaintiff would not sign the agreement.

The plaintiff testified that when he arrived at the mediation he was asked whether his claim was for discrimination or retaliation. Shulman then separated the parties into their own rooms, and he went back and forth between them.

The plaintiff felt abandoned and not represented properly by Lykes. He was a good worker, and the offer of $25,000 was a slap in the face. The plaintiff said that he signed the terms sheet at the end of the mediation because Lykes influenced him by making certain statements about the district judge.

Lykes originally sought $250,000 at the mediation, and the defendants originally proposed a settlement amount of $1,000. Among other things, Lykes explained to the plaintiff that he could lose at the summary judgment phase of the case, and the disciplinary reports that were discussed during his deposition might be enough for a jury to find against him. The plaintiff's mental health treatment was presented, but it was stricken from the

mediation. The plaintiff said that Lykes led him to believe that the jury might not like how he looks based upon his race.

The plaintiff testified that he was worn down on the day of the mediation due to missing his medication for anxiety and depression. He "spaced out" and "wasn't himself" when speaking with Lykes. He has been taking the medication for anxiety and depression as needed since March 2014. The plaintiff understood that he was signing something, but he "spaced out" about what Lykes told him. He understood the terms sheet would be the final "judgment," and he felt it was unfair. The plaintiff never told Lykes that he missed taking his medication on the day of the mediation.

Lykes testified that he engaged the plaintiff in conversation throughout the day. He had no reason to believe that the plaintiff was without medication or under mental disability; if he had reason to believe that, he would not have allowed the plaintiff to sign the terms sheet.

According to Garcia, the plaintiff never expressed that a lack of medication caused him not to understand the mediation process. Garcia did not observe that the plaintiff did not understand the process or fully understand that the mediation was a resolution of all of the claims. He did not witness the plaintiff sign the terms sheet.

II.

As indicated, Lykes seeks to enforce the terms of the parties'
mediated settlement agreement.  "Principles governing Florida contract law
apply to the interpretation and enforcement of settlement agreements." Conte
v. Winn Dixie Stores, Inc., 2014 WL 4693072 at *2 (N.D. Fla.); see Resnick
v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000).
Settlement agreements are favored and encouraged to conserve judicial
resources and will be enforced when possible.  Murchison v. Grand Cypress
Hotel Corp., 13 F.3d 1483, 1486 (11th Cir. 1994); Spiegel v. H. Allen Holmes,
Inc., 834 So.2d 295, 297 (Fla. App. 2002).

"To compel enforcement of a settlement agreement, its terms
must be sufficiently specific and mutually agreed upon as to every essential
element." Conte v. Winn Dixie Stores, Inc., supra, 2014 WL 4693072 at *3.
A party seeking to enforce a settlement agreement must show that the
opposing party assented to the agreement's terms.  Id.; Spiegel v. H. Allen
Holmes, Inc., supra.

Based on the evidence presented at the evidentiary hearing, it is
clear that the terms of the final settlement agreement should be enforced.  As
indicated, the terms sheet states that "the Parties agree to enter into a final

settlement agreement, which shall contain, but not be limited to, a general release and waiver of all claims" (Doc. 31, p. 4). The plaintiff signed the terms sheet, and Shulman and Lykes thought that the plaintiff did so voluntarily and with knowledge. Moreover, Lykes testified that the final settlement agreement contains the same payment and general release discussed in the terms sheet.

The plaintiff's belated assertion that he was worn down on the day of the mediation due to missing his medication for anxiety and depression is unavailing. There is no reason to believe that the plaintiff was "worn down" as a result of missing a dose of medication that he had been taking on an as needed basis for a year prior to the mediation. In fact, the plaintiff never told Lykes that he missed taking his medication on the day of the mediation, and Lykes testified that he had no reason to believe that the plaintiff was without medication or under mental disability. Most significantly, the plaintiff testified that he understood he was signing something and that the terms sheet would be the final judgment in this matter.

For the foregoing reasons, I recommend that the Motion to Enforce Mediated Settlement Agreement or, Alternatively, Motion to Reopen Case and for Withdrawal of Counsel for Plaintiff (Doc. 31) be granted to the

extent that the terms of the parties' settlement agreement be enforced.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: SEPTEMBER 8 , 2015

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and

recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).